**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | **Case No. 1:25CR-107** |
| **vs.** | : | **Judge Barrett** |
| **THOMAS NIEHAUS,** | : | |
| **Defendant.** | : | |

# SENTENCING MEMORANDUM

Now comes Thomas Niehaus, by and through counsel, and hereby submits this sentencing memorandum for the Court's consideration at sentencing.

## Introduction

Thomas Niehaus is scheduled to be sentenced on October 1, 2026, after pleading guilty to a violation of 18 U.S.C. 844(i), i.e., Malicious Use of Fire. He entered into a plea agreement pursuant to Rule 11(c)(1)(C), wherein the parties agree that Mr. Niehaus will pay restitution as determined by the Court and that the sentence imposed will run concurrently to the term of imprisonment imposed in Hamilton County Court of Common Pleas Case No. B2504133, a related and overlapping state matter charging Mr. Niehaus with seven counts of aggravated arson based on the same instant offense conduct.

While state and federal prosecutors and defense counsel worked collaboratively to reach a global resolution in these two pending matters, there is no agreement in either case as to the appropriate length of imprisonment. The parties here agree that the sentence to be imposed is entirely at the discretion of the Court, where each party is free to advocate in support of their position under 18 U.S.C. § 3553.

To that end, Mr. Niehaus submitted one objection to the guideline calculation: The probation office applied a cross-reference to the guideline governing Attempted Murder, which does not provide an accurate or fair representation of Mr. Niehaus's criminal conduct. The government endorses the probation office's application of this guideline because it dramatically ratchets up Mr. Niehaus's guideline range from 51-63 months to 135-168 months, a range applicable to someone who actually commits an attempted first-degree murder.

The Court should reject the application of this cross-reference. The guideline computation should instead be governed by U.S.S.G. § 2K1.4, the guideline associated with a violation of 18 U.S.C. § 844(i), the crime that Mr. Niehaus was charged with, the one to which he pleaded guilty, and the one that encompasses his actual offense conduct. As explained below, this guideline accounts for the entirety of Mr. Niehaus's offense conduct, including his animus-based motive, and results in a guideline range of 51-63 months.

Regardless of the guideline range ultimately applied by this Court, Mr. Niehaus submits that a sentence of 60 months of imprisonment is "sufficient" within the meaning of 18 U.S.C. 3553(a). Imprisonment for longer than 60 months is unwarranted given the nature and circumstances of the crime, Mr. Niehaus's history and characteristics, his commitment to rehabilitation, and the sentences given to similarly-situated defendants in this district and nationwide who have been convicted of similar animus-based and/or federal arson crimes.

**Thomas Niehaus's history and characteristics and the nature of the offense**

On July 30, 2025, in an inebriated state and traveling on bike, Mr. Niehaus set fire to Pride and Ukraine flags and/or yard signs and decorations in ten residential yards and/or porches in Cincinnati. Mr. Niehaus acknowledges that this crime is serious, that his conduct was harmful, and that he deserves a significant term of incarceration as punishment. When questioned by law

enforcement, Mr. Niehaus took ownership of his conduct and explained that he was extremely drunk at the time and acted out when "a friend told him about a movement that sexualizes children that was supposedly endorsed by the LGBTQ community," and that he misguidedly burned these flags to "send a message," not to kill. (PSR ¶ 16). While Mr. Niehaus spewed hate-filled speech while he set the flags on fire, Mr. Niehaus maintains, and the evidence supports, that his intent was not to physically harm individuals but to destroy property, namely, Pride insignia.

The belief and rage that motivated Mr. Niehaus that night is, of course, based on false and dangerous ideologies and ascriptions, which according to Mr. Niehaus, stem from "politics" and were unconsciously held until he committed the offense. (Exhibit A, Letter of Remorse). That Mr. Niehaus is able and willing to engage in critical self-analysis tells this Court that he has already taken meaningful steps on his path of rehabilitation and will use this prosecution as a springboard for growth and change.

In Mr. Niehaus's own words, after more than a year of incarceration in a county jail, he wrote, "When I saw the evidence videos of what I did when I was consumed with alcohol, I couldn't, and didn't want to believe what I was seeing, and never thought I was capable of being this way." He further explained, "Being incarcerated has caused me to have a new view of myself, although not a welcome one." He "take[s] away deep lessons from [his conduct]":

> I realize that anger, hatred, and politics are blinding, and I now know that they can live within you without you being really aware. I'm learning not to judge others, but to accept them as I would want to be accepted and I feel I have changed for the better after being confronted with the evidence of my wrongdoing. I look at people not as objects or as a threat but as fellow human beings who are to be cared for and respected.

Mr. Niehaus recognizes that his offense didn't just cause physical damage to Pride flags; he recognizes that he is responsible for causing psychological pain, fear and anger, and emotional turmoil for the families and the communities that his actions impacted. To his credit, he knows

that the process of making amends is not about apologizing to victims or the community at large (although he is truly sorry) but about educating himself and taking all the necessary steps to ensure that he uncovers, addresses, and rejects his own biases. Not many people are willing to confront themselves and do the hard work of rehabilitation, but Mr. Niehaus is.

In determining an appropriate sentence, as directed by 18 U.S.C. § 3553(a), the Court must balance the nature and circumstances of the offense against Mr. Niehaus's history and characteristics. Mr. Niehaus is 54 years old. Other than a conviction for reckless driving from 20 years ago, he has no criminal record to speak of and no history of violence or misconduct. In fact, he has 0 criminal history points, which means, statistically speaking, he has the lowest risk of recidivism across all categories of federal offenders.

Mr. Niehaus's personal history also reflects significant childhood trauma, loss, and instability. He was raised primarily by his maternal grandparents because his mother worked long hours, while his father was largely absent from his life. His mother struggled with anger and physically abused him: She punched him in the face and "knocked" him out numerous times between ages three and six, and he was told he needed reconstructive surgery on his nose because of her abuse. (PSR ¶ 55). His brother Robert was diagnosed with autism as a child and suffers from severe seizure activity; witnessing those seizures was traumatic, and on at least one occasion Mr. Niehaus had to call emergency services during a violent seizure. (PSR ¶ 56). He has experienced homelessness at various times in his adult life. His half-brother Karl, with whom he shared a close relationship, died at a young age from COPD in 2012. His wife, from whom he was separated but with whom he remained on cordial terms, passed away on Christmas Day 2025, while Mr. Niehaus was incarcerated for the instant offense. (PSR ¶ 61).

In addition to his age and his lack of a criminal record, Mr. Niehaus's history encompasses

other mitigating factors. Mr. Niehaus has an alcohol problem, for which he has never received treatment but recognizes he needs to address. He also has a significant mental health history, including prior diagnoses of Bipolar Disorder and Schizophrenia in 2001. (PSR ¶ 83). A forensic psychological evaluation found that Mr. Niehaus likely suffered from untreated ADHD as a child, which interfered with his learning and ability to focus. (PSR ¶ 88). The offense here occurred "at his lowest point," during a period of personal deterioration, untreated mental health and substance abuse issues, and accumulating loss. His mother's death in August 2023 was the precursor for the "over-drinking" that culminated with the instant offense.

Prior to his deterioration, Mr. Niehaus was a highly functioning, valued member of the community. He is a talented musician, having played violin for Boston Pops Orchestra, and most recently volunteered his time by playing music at nursing homes. His son Caleb told the probation officer, "My father likes to help people. He will go the extra mile for someone," and added, "My father has always been there for me. He made me feel understood and accepted." (PSR ¶ 65). Caleb and his father volunteered together at nursing homes, where they played music and sang Christmas carols, and at Matthew 25 Ministries. Mr. Niehaus played violin at eight nursing homes over just two weekends before his arrest. As noted in the presentence report, Mr. Niehaus prides himself on being a hard worker and has maintained numerous jobs in various fields throughout his adulthood. (PSR ¶ 103-104).

Mr. Niehaus's alcohol and drug use is an underlying contributing factor to the instant offense. Obviously, alcohol did not cause Niehaus to harbor biases towards others, but alcohol abuse certainly impaired his judgment and self-control. Alcohol addiction is treatable, as are Mr. Niehaus's other addiction and mental health issues. And most importantly, once a person's unconscious bias is recognized and acknowledged, there's a real opportunity to provide systemic

support to the person in their process of addressing and eliminating the bias. A combination of 60 months of imprisonment and community-based treatment is thus a reasonable—and sufficient—answer to the crime committed here.

**The guideline range should be computed under § 2K1.4, the guideline associated with a violation of 18 U.S.C. § 844(i), without cross referencing to § 2A2.1 because Mr. Niehaus did not commit an attempted murder.**

Mr. Niehaus was charged with "aggravated arson" by the State of Ohio and "malicious use of fire" in violation of 18 U.S.C. 844(i) by the federal government. In state court, Mr. Niehaus faces up to 77-115.5 years in prison for seven counts of aggravated arson. Notably, he was not (and is not) charged with attempted murder, as the evidence does not support this charge.

In federal court, Mr. Niehaus was charged with, and pleaded guilty to, one count of malicious use of fire, a crime governed by § 2K1.4 of the federal sentencing guidelines. The guideline computation under this guideline encompasses all aspects of the offense conduct and yields the following:

- Offense level 24 under 2K1.4(a)(1), i.e., the offense created a substantial risk of death or serious bodily injury to any person and that risk was created knowingly, **or** the offense involved the destruction of a dwelling.
- 3-level enhancement under 3A1.1(a), i.e., Mr. Niehaus agreed as part of his plea agreement that his conduct was motivated by animus and this enhancement should apply.
- 3-level reduction for acceptance of responsibility.
- **Final Offense level of 24/I = 51-63 months**

A cross reference to § 2A2.1 only applies where "death resulted or the offense was intended to cause death," and the caselaw further elaborates that the attempted first-degree murder guideline "requires the specific intent to kill." *United States v. Howell*, 17 F.4th 673, 689-90 (6th Cir. 2021). Here, death did not result, and Mr. Niehaus had no specific intent to kill, so this cross reference plainly does not apply.

In contrast, in *Howell*, for example, the Court found the cross reference appropriate where

the defendant pointed a gun at the victim, shot at her, but failed to kill her only because of "the fact that the bulletproof glass prevented the bullet from going through." *Id*. at 691. In assessing whether the defendant possessed the requisite specific intent for the cross-reference, the Court analyzed "where [the firearm] was discharged, and the way it was discharged." *Id*.

Further, the specific intent to kill requirement is not met when malice is demonstrated by reckless and wanton conduct. *United States v. Brooks*, 67 F. 4th 1244, 1249 (10th Cir. 2023); *United States v. Morgan*, 687 F. 3d 688, 697 (6th Cir. 2012)(remanding to the district court "because the facts do not inevitably lead to a finding of specific intent to kill and because this finding is essential to the application of the attempted-murder cross reference"); *United States v. Turner*, 436 Fed.Appx. 631 (6th Cir. 2011)(district court erred in applying the cross reference to attempted murder "based on a depraved heart").

Mr. Niehaus did not have the specific intent to commit a murder when he set the Pride flags and other insignia on fire. Yes, in his inebriated state Mr. Niehaus spewed hate speech, including statements such as "you're dead" and "kill em all", but, at most, this drunken speech evidences a misguided—even momentarily depraved—heart. But none of Mr. Niehaus's actual conduct could reasonably be found to support a determination that he possessed the specific intent to murder.

In order to assess the appropriateness of the cross-reference, the Court must assess not just what Mr. Neihaus did (or said) in the commission of the offense, but what he did not do. He did not throw anything inside a house to harm or kill its occupants. He did not attempt to break into a house, and he did not even know whether the houses at issue were occupied. According to the PSR, the fires occurred in the early morning hours, approximately 4:00-5:00 a.m., while all victims were asleep, and Mr. Niehaus's mode of transportation was a rented bicycle, not a vehicle that would facilitate a quick escape after committing acts of violence. The video and photographic

evidence depict Mr. Niehaus pulling flags from flag poles and burning the flags in the yard or street. In those instances, Mr. Niehaus did not return to the houses to attempt to set fire to the remaining flag poles affixed to the houses, for example, or to any other part of the house. Similarly probative of the lack of specific intent to kill, the evidence shows Mr. Niehaus burning a yard sign without approaching the house. "Premeditated intent is to kill [or attempt to kill] in cold blood after the accused has had some time to think over the matter and form the intent to kill." *United States v. Shields*, 2026 WL 1208952 (11th Cir. 2026). Mr. Niehaus did not approach the Pride decorations "in cold blood," and in his drunken, bike-riding state, he certainly did not pause to think anything over to form an intent to kill. There is no evidence of conscious planning, no evidence that he, for example, used the tiki torch to penetrate the house and cause a blazing fire or of extensive property damage suggesting a conscious plan to kill the occupants of the houses. No inference of murderous intent could reasonably be made under the facts here. Instead, the statements in the context of the evidence, demonstrate an intent to intimidate, not an intent to kill.

There's no question that Mr. Niehaus's conduct was dangerous and intentional as to the animus-motivated arson, but the evidence cannot support a cross reference to attempted first degree murder under § 2A2.1. The cross-reference to the guideline that governs attempted premeditated murder as defined by 18 U.S.C. § 1111 is wholly inappropriate and must be rejected.

**The need to avoid unwarranted sentencing disparity under 18 U.S.C. 3553(a)(6)**

18 U.S.C. § 3553(a)(6) requires sentencing judges to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" as well as the need to avoid unwarranted sentencing similarities among defendants who are not similarly situated. This statutory directive is designed to address unwarranted disparities on the national level, but the Court can and should seek to avoid

unwarranted disparity within the Southern District of Ohio as well.

A sentence of 60 months would not create unwarranted sentencing disparities among similarly situated defendants on the local or national level.

Recent national cases involving animus-based arsons resulted in sentences consistent with the one being requested by Mr. Niehaus. (See Exhibit B, Press Releases). Arson and animus-motivated crimes in the Southern District of Ohio have also resulted in sentences around 60 months. For example, in *United States v. Whitt*, Case No. 1:17-cr-60, a hate-based arson and vandalism case, this Court sentenced the defendant to 54 months of imprisonment where the defendant vandalized and attempted to set fire to a house in Price Hill because of the homeowners' race. There, the racist graffiti painted on the walls by the defendant called for the death of the owner. In that case, the government dismissed the 18 U.S.C. § 884(i) as part of plea negotiations and argued in its sentencing memorandum for a sentence of 60 months. The government emphasized that "[Whitt] left the gas running on the stove with a candle. Had the conditions aligned, the Price Hill house could have caught fire or exploded," and the defendant had a prior history of "convictions for similar racist conduct … even more dangerous … by involving the use of fire." Doc. #51. PAGEID #250. Unlike Mr. Whitt, Mr. Niehaus is not a recidivist offender, and any sentence longer than 60 months will create unwarranted disparity.

Further underscoring the appropriateness of a 60-month sentence for Mr. Niehaus is intra-district case *United States v. Tres Genco*, Case No. 1:21-cr-85. Mr. Genco was convicted of an attempted hate crime for targeting sororities and plotting to kill women at The Ohio State University based on incel ideologies. At sentencing, the government produced evidence that "the defendant purchased tactical gloves, bulletproof vest, a revenge kill hoodie, a bowie knife, and a skull facemask" and possessed a machine gun. Doc. # 67, PAGEID 501. Instead of imposing the

government's request for 150 months of imprisonment, the district court sentenced Mr. Genco to 80 months of imprisonment. *See also United States v. Darrin Johnson*, Case No. 1:22-cr-89 .(defendant sentenced to 22 months for federal hate crime where defendant physically attacked an Asian American victim causing "orbital contusion, facial lacerations and acute head injury" while threatening to kill victim based on his actual or perceived race).

Other arson cases in the Southern District of Ohio support the reasonableness of a 60-month sentence. For example, in *United States v. Donald Donatelli*, 1:24CR35, the district court sentenced the defendant to 66 months of imprisonment for a violation of 18 U.S.C. 844(i) and conspiracy. There, the defendant threw a Molotov cocktail into a grocery store while the store owner and his wife were inside, causing $157,000 in property damage. Similarly, in *United States v. Kim Tien Vu*, Case No. 1:23cr16, the district court imposed a sentence of 46 months for a violation of 18 U.S.C. 844(i), where the defendant and others attempted to set fire to a nail salon by planting a bomb inside the salon while customers and employees were present.

In sum, there is no legitimate argument that a sentence of 60 months would be inconsistent or too lenient or unwarranted. Rather, a review of the relevant body of cases demonstrates that five years of imprisonment is significant punishment commensurate with the gravity and nature of Mr. Niehaus's crime.

**Punishment and Rehabilitation**

As the Court is well aware, the objectives of 18 U.S.C. § 3553(a) require that the sentence encompass more than just retribution for the crime. The Court must engage in a multi-factored sentencing analysis that accounts for a defendant's personal history and characteristics, other sentences meted out for similar crimes so as to avoid over-punishing, and evidence of post-offense efforts to change and learn from one's crime. A focus on the sentencing goal of rehabilitation is

the most effective way to address public safety concerns.

In fashioning a sentence in this case, the Court is in a unique position to facilitate Mr. Niehaus's rehabilitation. Mr. Niehaus is earnest about his desire to grow and change because of this prosecution. Even while incarcerated in county jail with limited resources, he has spent his time "reading and lending an ear to guys who have no one else that they can confide in" and reflecting on his thinking errors. He proactively requested mental health assistance after his arrest and again after his wife's death, demonstrating that his commitment to rehabilitation is not merely aspirational but already underway. A substantial term of supervised release with conditions that monitor excessive alcohol use, provide for anger management, and require cognitive behavioral therapy/counseling following a 60-month sentence addresses each sentencing goal enumerated under 18 U.S.C. 3553(a).

Notably, in requesting 60 months of imprisonment, the defense is appealing for fairness. As the Supreme Court observed in *Gall*,

> Respect for the law is promoted by punishments that are **fair** [emphasis supplied]… not those that simply punish for punishment's sake. A sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing. *Gall v. United States*, 128 S. Ct. 586 at 599 (2007).

*United States v. Stern*, 590 F. Supp. 2d, 945 956 (N.D. Ohio Dec. 19, 2008).

Sixty months in prison will have a sweeping and life-altering impact on the 54-year-old man with no criminal record and no history of violence who stands before the Court for sentencing.

## Conclusion

For the foregoing reasons, a sentence of 60 months is "sufficient but not greater than necessary" under 18 U.S.C. § 3553(a).

Respectfully submitted,

*/s/ Karen Savir*
Karen Savir (KY92002)
Zenaida R. Lockard (KY93402)
Assistant Federal Public Defenders
250 East Fifth Street, Suite 350
Cincinnati, Ohio 45202

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the Sentencing Memorandum was electronically served upon Ebun Taiwo, Assistant United States Attorney, this 30th day of September 2026.

*/s/ Karen Savir*
Karen Savir (KY92002)
Assistant Federal Public Defender